This is a tax case.
The dispositive issue on appeal is whether the trial court was correct in its determination that the instant sale was a wholesale sale and not subject to sales tax. We find the trial court's determination to be correct and affirm.
The record reveals the following pertinent facts: Between July 1, 1976, and August 31, 1977, General Oils, Inc. (General) sold The Mead Corporation (Mead) 18,273,793 gallons of No. 6 fuel oil at a total price of $4,826,086.19 for use by Mead in the manufacture of paper products. In connection with these sales, Mead paid General approximately $193,000 in sales taxes which General duly remitted to the Alabama Department of Revenue.
Mead manufacturers two products, i.e., a corrugated paperboard and a concentrated liquor which is a by-product of the paper making process. During the period covered by the petition, Mead sold approximately 250 tons of the paperboard and also some thirteen and one-half tons of the liquor.
In the process of manufacturing both the above mentioned products, Mead used No. 6 fuel oil which contains sulphur. The use of this fuel is intended to serve a dual purpose; it supplies energy to power the mill machinery and it is the source of sulphur which enters into and becomes an ingredient *Page 28 
of both products which Mead manufactures.
A discernible amount of the sulphur derived from the No. 6 fuel oil remains in and is an ingredient of the paperboard, to wit, 0.34 percent. With regard to the concentrated liquor, the record indicates that the typical sulphur content thereof is 4.36%.
As previously indicated, Mead paid General sales taxes on the fuel Mead purchased from General. General, in turn, remitted these funds to the state. In October of 1977, General and Mead filed a petition for refund with the Commissioner of Revenue to recover these taxes. The Commissioner denied the petition except to the extent of approximately $5,000, i.e., that portion of the tax attributable to the sale of sulphur included in the sale of No. 6 fuel oil.
The petitioners did not accept this partial refund, maintaining that Mead's purchases of fuel oil from General were at wholesale and thus were entirely tax-free.
The trial court, after hearing the evidence ore tenus, granted a writ of mandamus requiring a full refund of the sales tax paid by petitioners and the Commissioner appeals.
The state alleges that when Mead purchased its No. 6 fuel oil, it was in effect acquiring two separate and distinct commodities at the same time, i.e., oil and sulphur. The state contends that since the sulphur is the only material which is incorporated into and becomes part of the finished products, Mead is not entitled to a complete sales tax exemption on the purchase of its oil. Mead is, they contend, only entitled a tax exemption with respect to that portion of the oil which represents the sulphur. This is so because, viewing the oil as a separate commodity, no part of the oil winds up in Mead's finished products.
We do not agree with this contention and affirm the learned trial judge's conclusion that the Commissioner's "Two Product Theory" is insupportable as a matter of fact and of law.
Alabama's sales tax, by its terms, is imposed only upon sales or receipts of those engaged within the state in the business of selling at retail. Code of Ala. 1975, § 40-23-2 (1). Retail sales are defined in § 40-23-1 (a)(10) as all sales of tangible personal property except those defined as wholesale sales. Wholesale sales, which are not subject to the sales tax, are defined in § 40-23-1 (a)(9)(b) as follows:
 ". . . sale[s] of tangible personal property or products . . . to a manufacturer . . . which enter into and become an ingredient or component part of the tangible personal property or products which such manufacturer . . . manufactures . . . for sale . . ."
(Emphasis supplied.)
Thus, under the language of the statute, if the commodity purchased by the manufacturer, enters into and becomes an ingredient of the finished product, the sale is tax free.
The law of Alabama, interpreting this section, has recently been modified. See e.g., Robertson Associates, Inc. v.Boswell, Ala., 361 So.2d 1070 (1978). Prior to Robertson, our decisions uniformly construed the statute to mean that if any
portion of the purchased product became an ingredient or component of the manufactured product, this purchase was at wholesale and not at retail. State v. United States SteelCorp., 281 Ala. 553, 206 So.2d 358 (1968); State v. SouthernKraft Corp., 243 Ala. 223, 8 So.2d 886 (1942); Boswell v. AbexCorp., 55 Ala. App. 477, 317 So.2d 314, cert. denied, 294 Ala. 334, 317 So.2d 317 (1975). The Department of Revenue, itself, recognized this statutory construction and promulgated regulation W27-171 which reads pertinently as follows:
 "Any material purchased by a manufacturer which he intends to become a part of his product and which does in fact become a part thereof, even to the extent of 2/100 % or less, is purchased at wholesale, tax-free. . . ."
The Robertson case modified the test noted in Abex, supra.Robertson, while not rejecting the former test, states that the inquiry "is whether the manufacturer used the material with theintent and *Page 29 purpose of making it an ingredient or component part" of the finished product. (Emphasis supplied.) 361 So.2d at 1073. Thus, reading Abex in conjunction with the holding in Robertson, the test which is now dispositive of the instant case is twofold: If any part of a product purchased by a manufacturer isintended to remain and does remain in the manufacturer's finished product, the purchase is at wholesale, and therefore is tax free.
The record reveals, as we noted above, that Mead intended the fuel oil it purchased to serve a dual function. The oil was to supply energy, and it was also to be a chemical contributor of sulphur to the finished products. To that end, Mead manufactured its products, each of which contained a discernible amount of sulphur in the quantities noted above. Clearly, under the facts established at trial and the law applicable to those facts, General's sales of fuel oil to Mead were tax-free wholesale sales.
The case is due to be affirmed.
AFFIRMED.
BRADLEY, J., concurs.
WRIGHT, P.J., dissents.