Delaney's, Inc., and Springdale Stores, Inc. (hereinafter jointly referred to as "the Taxpayers"), contested the revocation of current use valuation for tax assessment purposes on certain parcels of real property located in Mobile County. The trial court concluded that a grant of current use valuation in a previous tax year precluded reexamination of the property's eligibility for current use valuation in a subsequent tax year, and entered a summary judgment for the Taxpayers. The State of Alabama; Freda P. Roberts, revenue commissioner of Mobile County; and the Mobile County Board of Equalization (hereinafter jointly referred to as "the Taxing Authorities") appeal. We reverse and remand.
Alabama's statutory scheme for the taxation of real property prescribes, as a general rule, that ad valorem taxes are based upon the fair and reasonable market value of the property. § 40-7-15, Ala. Code 1975. Beginning on October 1, 1978, the state legislature permitted an exception to the rule for property known as Class III property, which defined as agricultural, forest, residential, or historic property. §§40-7-25.1 and 40-8-1, Ala. Code 1975. Upon application by the property owner, Class III property may be assessed for ad valorem tax purposes at its current use value rather than its fair market value. Id. The assessed value of property eligible for current use treatment is based upon the use being made of the property on October 1 of any taxable year. Id.
The Taxpayers are related corporations that together own the 11 parcels of real property at issue in this case. The property is located in Mobile County near the intersection of Interstate Highway 65 and Airport Boulevard. At various times during the tax years 1985 through 1989, the Taxpayers filed applications for current use valuation on these 11 parcels of property with the Mobile County tax assessor, all of which were granted. According to the Taxpayers, the property was being used as timberland. On April 1, 1989, Freda Roberts assumed the duties of the newly created office of revenue commissioner of Mobile County.[1] The revenue commissioner's office undertook a review of the property in Mobile County that was being *Page 770 
taxed on the basis of current use valuation. The parcels owned by the Taxpayers were included in the property reviewed. After requesting information from the Taxpayers and having the property inspected and appraised, the revenue commissioner determined that none of the 11 parcels of property at issue here was being used "for the growing and sale of timber and forest products." § 40-8-1(b)(1), Ala. Code 1975. See also §40-7-25.1. The revenue commissioner revoked the current use assessment, reclassified the property as Class II property, i.e., property not otherwise classified, and assessed ad valorem taxes based on fair market value. In tax year 1990, the total ad valorem tax bill for all 11 parcels, assessed as Class III property and based on current use value, was $147.29. In tax year 1991, the total ad valorem tax bill for all 11 parcels, assessed as Class II property and based on fair market value, was $134,278.01.
The Taxpayers appealed the revised assessments to the Mobile County Board of Equalization, arguing that the property should have retained its Class III status so that it could continue to enjoy current use valuation. The Board ruled that it did not have the authority to review the denial of current use valuation to the Taxpayers. The Taxpayers then filed in the Mobile Circuit Court an action for a declaratory judgment against the Taxing Authorities. The Taxpayers asked the court to declare that the Board had the authority to review the reclassification of their property or, in the alternative, to decide the dispute between the parties by declaring that the reclassification of their property was improper. While the declaratory judgment action was pending, the Board rendered 11 decisions on July 25, 1991, fixing the final value for assessment on each of the 11 parcels for the tax year 1991 on the basis of fair market value. Delaney's and Springdale Stores each appealed the Board's decisions to the Mobile Circuit Court pursuant to § 40-3-25, Ala. Code 1975. The three actions were then consolidated.
The Taxpayers filed a motion for summary judgment, which was opposed by the Taxing Authorities. After discovery, extensive briefing, and oral argument, the trial court entered a summary judgment in favor of the Taxpayers. The trial court held that the tax assessor's initial grant of the Taxpayers' applications for current use valuation was "res judicata as to the question of whether the use to which this property is being put qualifies for current use status," and declared the ad valorem tax assessments for the tax year 1991 to be void and illegal. The trial court then directed the revenue commissioner to reissue assessments for the 11 parcels, with corresponding tax bills, in which the property was assessed as Class III property based upon current use valuation. The Taxing Authorities appealed to the Supreme Court of Alabama; however, that court transferred the case to this court on jurisdictional grounds.[2] The Alabama Association of School Boards, the Association of Tax Assessors and Tax Collectors of Alabama, the Association of County Commissions of Alabama, the Alabama Education Association, the Mobile County Parent Teacher Association, the Board of School Commissioners of Mobile County, the Baldwin County district attorney, the Baldwin County Commission, the Baldwin County tax assessor, and the Baldwin County tax collector have filed amicus curiae briefs in support of the Taxing Authorities.
The Taxing Authorities present two issues on appeal. They contend that the tax assessor's decisions granting the Taxpayers' applications for current use valuation in tax years 1985 through 1989 do not preclude reclassification of the property in the tax year 1991 on the basis of res judicata. The Taxing Authorities also contend that the record in this case contains sufficient evidence for this court to reverse the summary judgment for the Taxpayers.
We first address the Taxing Authorities' argument that the initial assessments of the subject parcels of property during 1985 through 1989 are not res judicata as to their reclassification in subsequent tax years. This issue is one of first impression in Alabama. The trial court's decision to apply the *Page 771 
principle of res judicata is a conclusion of law that is reviewable de novo by this court. Manning v. City of Auburn,953 F.2d 1355, 1358 (11th Cir. 1992); Helms v. Helms' Kennels,Inc., 646 So.2d 1343 (Ala. 1994).
The Taxing Authorities and amici curiae argue that at least two, if not more, of the elements of res judicata are missing in this case. Alabama law requires proof of four elements before the doctrine of res judicata can be applied. Our supreme court has discussed these elements as follows:
 "In order for the doctrine of res judicata to apply (1) the question or fact must have been litigated and determined by a court of competent jurisdiction; (2) a final judgment must have been rendered on the merits; (3) the parties, or those in privity with them, must be so related to the parties in the subsequent action as to entitle those in the subsequent action to the benefits and/or burdens of the prior litigation; and (4) the same cause of action must be involved in both suits."
Waters v. Jolly, 582 So.2d 1048, 1053 (Ala. 1991) (citations omitted). If all four elements are present, than any issue that was, or could have been, decided in the initial action cannot be litigated in the subsequent action. Id. If one of the four elements is missing, however, then the doctrine of res judicata is inapplicable. Manning, 953 F.2d at 1358; Fisher v. Space ofPensacola, Inc., 461 So.2d 790, 792 (Ala. 1984). We agree with the Taxing Authorities that at least one element of the doctrine, the fourth, has not been satisfied in the instant case, thus making this doctrine inapplicable. Because the fourth element of the doctrine of res judicata is not present in this action, we pretermit any discussion of the first three elements.
For the doctrine of res judicata to apply, the same cause of action must be involved in both lawsuits. Our supreme court discussed this premise in State v. Plantation Pipe Line Co.,265 Ala. 69, 89 So.2d 549 (1956), a case involving franchise taxes in different years. The court quoted with approval the following applicable principles from Annotation, "Judgment in Tax Cases in Respect of One Period as Res Judicata in Respect to Another Period," 150 A.L.R. 5 (1943):
 " 'Generally, where in a proceeding concerning a tax for a particular period a judgment is rendered which determines that the taxpayer or his property is taxable or is exempt from taxation, but is not supported by a finding or findings specifying the grounds or facts upon which the conclusion is reached, such judgment has been held not to settle conclusively the question that the taxpayer or his property is taxable, or exempt from taxation, for a different period not involved in the former proceeding. This observation is borne out by nearly all the cases, irrespective of the theory upon which the result is reached under the particular circumstances of an individual case.' 150 A.L.R. at page 63.
 " 'The general rule that "a judgment on one cause of action is not conclusive in a subsequent action based upon a different cause of action as to questions of fact which might have been but were not litigated and determined in the prior action" (see Am. Law. Inst. Restatement, Judgments § 68, Comment d), has been applied where taxes for different periods were involved in successive proceedings.' 150 A.L.R. at page 32."
265 Ala. at 91, 89 So.2d at 568-69 (emphasis added).
According to federal tax law, the matter is well settled. InKeokuk W. R.R. v. Missouri, 152 U.S. 301, 14 S.Ct. 592,38 L.Ed. 450 (1894), the Supreme Court said: "A suit for taxes for one year is no bar to a suit for taxes for another year. The two suits are for distinct and separate causes of action."152 U.S. at 314, 14 S.Ct. at 597. The United States District Court for the Northern District of Alabama discussed the issue as follows:
 "[I]t seems too clear to require the citation of authorities that plaintiff's reliance upon the judgment of dismissal entered in Civil Action 7641, wherein he asserted a claim for refund of taxes paid for the year 1949 as res judicata of his claims for recovery of taxes for the years 1955 through 1958 is misplaced. It is axiomatic in tax law that there is a separate cause of action for each tax year." *Page 772 
Fuqua v. Patterson, 193 F. Supp. 313, 315 (N.D.Ala.), aff'd, 295 F.2d 509 (5th Cir. 1961). See also United States v. Stone Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927), Annot., "Judgment in Tax Cases as Res Judicata," 274 U.S. 225,47 S.Ct. 616, 71 L.Ed. 1013 (1928).
Although the doctrine of res judicata cannot apply because there is a separate cause of action for each tax year, it is incumbent upon this court to also address whether the principles of collateral estoppel might bar the revenue commissioner's reexamination of the Taxpayers' qualification for current use valuation. Collateral estoppel operates where the same cause of action is not present in a subsequent action between the same parties. Wheeler v. First Alabama Bank ofBirmingham, 364 So.2d 1190, 1199 (Ala. 1978). The United States Supreme Court addressed the application of the doctrines of res judicata and collateral estoppel to federal income tax questions in Commissioner of Internal Revenue v. Sunnen,333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).
 "These same concepts [res judicata and collateral estoppel] are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. . . .
". . . .
 "And so where two cases involve income taxes in different tax years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. . . .
". . . .
 ". . . [I]f the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case."
333 U.S. at 598-601, 68 S.Ct. at 719-21 (emphasis added).
The United States Supreme Court again addressed the application of the doctrine of collateral estoppel in taxation cases in Limbach v. Hooven Allison Co., 466 U.S. 353,104 S.Ct. 1837, 80 L.Ed.2d 356 (1984), this time in regard to import taxes.
 "The years involved in this tax case, however, are not the same tax years at issue in Hooven I
[Hooven Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945)]. Because of this, Commissioner v. Sunnen, supra, is pertinent and, indeed, is controlling. . . . An earlier decision . . . involving the same facts, questions, and parties but different tax years, was held not to be conclusive under the doctrine of collateral estoppel. . . ."
466 U.S. at 362, 104 S.Ct. at 1843.
Courts in other jurisdictions have had the opportunity to address the precise question of whether an ad valorem tax assessment has preclusive effect in future tax years, and they have held that it does not. In Cave Hill Cemetery Co. v. Scent,352 S.W.2d 61 (Ky. 1961), the Kentucky Court of Appeals concluded:
 "The unappealed judgments of former years are not determinative of the present litigation. The doctrine of res judicata ordinarily has little application to tax litigation . . ., for 'the taxes for a subsequent year constitute a new cause of action.' "
352 S.W.2d at 64 (quoting City of Newport v. Commonwealth, 21 Ky.L.Rptr. 42, 106 Ky. 434, 50 S.W. 845, 849 (1899) [overruledon *Page 773 other grounds, Board of Councilmen v. Commonwealth, 29 Ky.L.Rptr. 699, 94 S.W. 648, 651 (1906)]). See also AtkinsonDredging Co. v. Thomas, 266 S.C. 361, 223 S.E.2d 592, 597
(1976) (the principle of collateral estoppel should be sparingly applied where the taxing power of the state is concerned); Town of Harrison v. County of Westchester,34 Misc.2d 1020, 231 N.Y.S.2d 20, 31 (N.Y. Sup. Ct. 1962), aff'd,18 A.D.2d 1136, 239 N.Y.S.2d 862 (N.Y.App. Div.) aff'd,13 N.Y.2d 258, 196 N.E.2d 240, 242, 246 N.Y.S.2d 593, 596 (N Y 1963) (determination of taxable status for any one year is not res judicata for any other year, because each assessment is a separate proceeding). Cf. Hubbard Press v. Tracy, 67 Ohio St.3d 564, 621 N.E.2d 396, 397 (1993) (collateral estoppel does not apply to exemption from property taxation in proceedings in different tax years); Missouri Pac. Hosp. Ass'n v. PulaskiCounty, 211 Ark. 9, 199 S.W.2d 329, 333 (1947) (judgment rendered in one year holding property exempt from taxes because of charitable use is not res judicata regarding the property taxes for a subsequent year). We find the reasoning of these courts persuasive.
The Taxpayers argue that the cause of action adjudicated is whether the subject property qualifies for current use valuation, and that once determined, any attempt to change that determination is barred by the doctrine of res judicata. This approach is far too narrow. Tax litigation concerns the tax liability of the taxpayer for a given year, and consideration must be given to all factors that comprise the determination of that tax liability. Whether property qualifies for current use treatment is but one of those factors. We conclude that an ad valorem tax assessment for one tax year has no preclusive effect in future tax years, there being a separate cause of action for each tax year. The summary judgment in favor of the Taxpayers, entered on the basis of res judicata, must be reversed.
The Taxpayers also argue that the initial decision of the tax assessor granting their current use applications should be given binding effect because § 40-7-25, Ala. Code 1975, provides that "the assessed value of any real estate or improvements as fixed for taxation for the year next preceding the then current tax year shall be prima facie the basis of the value of such property for assessment for the current tax year. . . ." The Taxpayers contend that, according to this statute, the prior year's assessment is prima facie the basis for the current year's assessment, and that the tax assessor has a duty to assess the property at the same value in successive years, pursuant to § 40-7-14, Ala. Code 1975, unless there has been a change in the condition of the property. We cannot agree with the Taxpayers' interpretation of the tax assessor's statutory duty. In fact, if the use of property qualified for current use valuation is altered so that the property no longer qualifies, § 40-7-25.3 imposes on the tax assessor the duty to thereupon appraise the property at its fair market value.
Section 40-7-25.2(e) does not require a different result. Once an application for current use valuation is granted by a tax assessor, § 40-7-25.2(e) relieves the taxpayer from the burden of reapplying annually for this benefit. This provision is simply a convenience to both the taxpayer and the tax assessor. If the property is sold or otherwise disposed of, however, the new owner must apply for current use valuation. Similar provisions apply to the homestead exemption allowed for residential property occupied by an owner as his or her primary residence. Once a homeowner has provided the necessary documentation to the tax assessor's office, the homeowner is not required to reapply each year for a homestead exemption. Should the owner cease to occupy the property as a primary residence, however, the exemption is no longer allowed. The taxpayer is not allowed the benefit of the homestead exemption if his or her use of the property changes, regardless of the fact that a homestead exemption was granted in a prior tax year.
The Taxpayers' argument also fails to consider the effect of § 40-7-9.1, Ala. Code 1975, which states:
 "Whenever an error is found in the assessment, computation, or calculation of the amount of ad valorem taxes, penalties, or fees due thereon . . . the official charged with assessing and/or collecting such taxes, *Page 774 
penalties, or fees is hereby authorized to correct the same in his records; provided, however, he shall file in the record the proper evidence to support his action."
Prior to 1989, tax assessors were authorized only to correct manifest errors in the computation of taxes due. § 40-7-9, Ala. Code 1975. With the adoption of § 40-7-9.1 in 1989, the legislature significantly expanded the authority of tax assessors to correct errors made in the determination of ad valorem taxes, specifically including assessment. Section40-7-9.1 clearly evinces the legislature's intention to authorize tax assessors to correct any errors discovered in the determination process, including the re-evaluation of the property's eligibility for an assessment based on current use valuation. Any other conclusion would defy our legal precedents, public policy, and common sense.
In Cooper v. Board of Equalization of Madison County,392 So.2d 244 (Ala.Civ.App. 1980), this court addressed the interpretation of the current use valuation statutes:
 "The appraisal of property for assessment purposes at its fair and reasonable market value is the rule, and the current use valuation is the exception. The current use valuation statutes are, therefore, construed against the taxpayer and in favor of the taxing authority."
392 So.2d at 246 (citations omitted). Furthermore, inBoswell v. Abex Corp., 294 Ala. 334, 317 So.2d 317 (1975), a case involving the payment of certain use taxes, our supreme court concluded that no taxpayer has the right to rely upon an erroneous interpretation of a tax exemption statute:
 "Taxpayers have no vested right to rely upon an erroneous interpretation of the statute exempting them from taxation, and under Section 100 of the Constitution of Alabama of 1901, the taxing authority has no discretion in a matter of this kind. The reason for this rule is that in the assessment and collection of taxes, the State is acting in its governmental capacity and it cannot be estopped with reference to the enforcement of taxes, even when the taxpayer was advised that it was not responsible for a tax. Were this not the rule the taxing officials could waive most of the State's revenue."
294 Ala. at 336, 317 So.2d at 319. The same conclusion applies to an erroneous tax assessment.
We also find the United States Supreme Court's reasoning inSunnen to be squarely applicable to this case:
 "A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare United States v. Stone Downer Co., 274 U.S. 225, 235-236, 47 S.Ct. 616 [618-19] 71 L.Ed. 1013 [(1927)]. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers."
333 U.S. at 599, 68 S.Ct. at 720 (emphasis added).
Common sense dictates that tax assessors must have the ability to correct any errors that exist in the assessment process, including the ability to revoke current use valuation if the use of the property no longer conforms to the appropriate criteria for allowing current use valuation. Nonconforming use could result from a change in the use of the property by the owner after the initial application for current use valuation has been granted. Nonconforming use could also, in *Page 775 
some cases, result from an erroneous or improper grant of current use valuation in the first instance. This court will not sanction an interpretation of the law that allows a taxpayer to continue to enjoy a tax benefit at the expense of the other taxpayers of the state if the taxpayer no longer qualifies for the benefit or if the benefit was erroneously or improperly granted.
We now turn to the second issue presented by the Taxing Authorities, who argue that they presented substantial evidence in support of their contention that the Taxpayers changed their use of the 11 parcels after current use valuation was granted and, therefore, that the summary judgment motion should have been denied. A motion for summary judgment is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Harvell v. Johnson, 598 So.2d 881,882 (Ala. 1992). The moving party bears the burden of demonstrating that there are no disputed material facts, and the evidence must be viewed in a light most favorable to the nonmoving party. Harvell, 598 So.2d at 882. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975, Harvell, 598 So.2d at 882. See West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
The record clearly reflects that the Taxing Authorities presented substantial evidence in support of their position that the Taxpayers' use of the 11 parcels of property has changed to the point that they are no longer entitled to current use valuation. On the other hand, the Taxpayers also presented substantial evidence in support of their position that their use of the property in 1991 remained unchanged from previous tax years. The resolution of conflicting evidence is the province of the trial court; therefore, this cause must be remanded for further proceedings to determine whether the revenue commissioner's decision to revoke the Taxpayers' current use valuation was correct.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
All the judges concur.
[1] In 1988, by local act, Mobile County combined the offices of tax assessor and tax collector into the office of the revenue commissioner, effective either upon the expiration of the current terms of the offices of the tax assessor and tax collector or upon the occurrence of a vacancy in either office before the expiration of the current terms. Act No. 88-809, Ala. Acts 1988. The office of the Mobile County tax assessor became vacant in 1989, thus allowing the creation of the office of revenue commissioner effective April 1, 1989.
[2] The Alabama Court of Civil Appeals has exclusive appellate jurisdiction of all appeals from administrative agencies other than the Public Service Commission. § 12-3-10, Ala. Code 1975.